Gertrude TEAGUE et al., Appellants,

v.

Bill ROPER et ux., Appellees.

No. 8517.

Court of Civil Appeals of Texas, Amarillo.

Aug. 4, 1975.

Rehearing Denied Aug. 29, 1975.

Crenshaw, Dupree & Milam and James H. Milam and Cecil Kuhne, Lubbock, Hall & Tollett and Thomas E. Tollett, Littlefield, for appellants.

Brock, Waters & Galey and Harold H. Pigg, Lubbock, for appellees.

ROBINSON, Justice.

Plaintiff tenants, Bill Roper and Eula Faye Roper, sued defendant landowner, Gertrude Teague, Trustee, to establish a parol lease on land for a five-year term beginning January 1, 1973. Defendant by counterclaim sought title and possession of the land. The trial court overruled defendants' motion for directed verdict and motion for judgment n. o. v. and entered judgment on the verdict for plaintiff. Defendants appeal. Affirmed.

It is undisputed that plaintiffs had been in possession of the land in question for a number of years and were in possession of the land in January, 1973, under an oral year to year lease. During 1973, they remained in possession, adapted part of the land to sprinkler irrigation and installed underground pipe and a sprinkler system.

The jury found that in January of 1973, Mrs. Teague agreed that the Ropers could have possession of the land for five years for a term beginning January 1, 1973, on the same terms governing their previous tenancy. It further found that Mrs. Teague permitted the Ropers to remain on the land in 1973 under that agreement; that the Ropers furnished underground pipe and a sprinkler system and adapted part of the land to sprinkler irrigation; that in placing the underground pipe and adapting the land, they made valuable improvements on the land; that they did so in reliance on the agreement to leave them in possession of the land; and that Mrs. Teague consented to the making of the improvements.

The statute of frauds provides that a sale of real estate or a lease of real estate for a term longer than one year is unenforceable unless it is in writing and signed by the person to be charged by the agreement or someone authorized to sign for him. Texas Business & Commerce Code Annotated,

§ 26.01, 1967; also Article 1288, Vernon's Ann.Tex.Civ.St.

The Supreme Court enumerated in *Hooks v. Bridgewater,* 111 Tex. 122, 229 S.W. 1114 (1921), the elements necessary to remove a parol sale from the operation of the statute. They are (1) payment of consideration whether it be in money or services, (2) possession by the vendee, and (3) the making by the vendee of valuable improvements upon the land with the consent of the vendor or the presence of facts that would make the transaction a fraud on the purchaser if it were not enforced. Each of these three elements must exist before a parol sale of land will be enforced. The same elements must be established to remove a parol lease for a term of more than a year from the operation of the statute. *Ward v. Etier,* 113 Tex. 83, 251 S.W. 1028 (Comm. of App. 1923, opinion adopted).

We first consider whether the evidence taken in the light most favorable to plaintiff supports the submission to the jury of the issue asking if Mrs. Teague allowed the Ropers to remain in possession under a five-year oral lease. Since it is undisputed that they remained in possession during 1973, the question for our determination is whether the evidence is legally sufficient to show that the Ropers' possession is referable to the new five-year lease so as to remove the lease from the provisions of the statute of frauds and permit its enforcement.

The plaintiff in *Hooks v. Bridgewater* had never been in possession of the land. Hence, the court did not address the question of whether a plaintiff who was already in possession and who continued in possession under a new oral agreement within the statute had such possession as would remove the agreement from the operation of the statute.

In *Francis v. Thomas, et al.,* 129 Tex. 579, 106 S.W.2d 257 (1937), the court held that acts of performance relied upon to take a parol contract out of the statute of frauds must be such as could have been done with

no other design than to fulfill the particular agreement sought to be enforced, otherwise they do not tend to prove the existence of the parol agreement relied upon by plaintiff. Quoting *Burns v. McCormick,* 233 N.Y. 230, 135 N.E. 273, the court stated:

"'There must be performance "unequivocally referable" to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing.

'"An act which admits of explanation without reference to the alleged oral contract or a contract of the same general nature and purpose is not, in general, admitted to constitute a part performance." *Woolley v. Stewart,* 222 N.Y. 347, 351, 118 N.E. 847, 848.

'What is done must itself supply the key to what is promised. It is not enough that what is promised may give significance to what is done.'"

We conclude that, if the grantee is already in possession when the contract is made, a continuance of possession will not ordinarily suffice, although under the circumstances of a particular case, a continuance of possession may be such as to be referable exclusively to a new oral contract. 37 C.J.S. Statute of Frauds § 252, p. 768.

Thus, it has been held that where tenants were already in possession of an apartment at the time of a verbal lease, continued to pay the same rental as before the lease, and made no improvements in reliance on the lease except for painting the walls, that they had failed to show possession under the verbal lease by the lessee. *Urban v. Crawley,* 206 S.W.2d 158 (Tex.Civ.App., Eastland 1947, writ ref'd n. r. e.).

On the other hand in *Lehman v. Barry,* 126 S.W.2d 499 (Tex.Civ.App., Waco 1939, writ dism'd judg. corr.), joint possession by Mrs. Barry, begun before a parol gift and continued after the gift, together with valuable improvements made by her and rec-

ognition of her interests by the donor, was found to be sufficient to relieve the conveyance from the requirements of the statute of frauds. See also *Patterson v. Patterson*, 27 S.W. 837 (Civ.App.1894, writ ref'd).

The evidence in the case before us is in conflict. Mrs. Teague testified that about the first of December, 1972, she became angry because of what she considered Roper's excessive use of wheat pasture and told him that he would not be permitted to farm the land in 1974. She said that she did not have any conversation with him concerning a five-year lease and did not give him permission to install the sprinkler system. On the contrary, she said that about the first of February, 1973, Roper came to her house and mentioned a sprinkler system, that she told him she would think about it and did not give him an answer then, but that she told him "no" on about the 8th of February, 1973. She said that Roper became angry at her refusal and told her that he did not want to farm the land.

Roper testified that he discussed putting in the sprinkler system, at no cost to the trust, with Mrs. Teague early in January, 1973, telling her that he would need a five-year lease if he did so because he would be undertaking a large debt. He said that in January she agreed to the lease and consented to his putting in the sprinkler system. Shortly after she consented, he entered into a contract for the purchase and installation of the sprinkler system at a cost of approximately $22,000.00 for the entire installation.

In evidence is a contract between Roper and Gifford-Hill Co., Inc. for the purchase of a sprinkler system. The contract is dated January 17, 1973, and provides for payment in installments over a five-year period.

Mrs. Roper is Mrs. Teague's daughter. One of Mrs. Teague's other daughters, Mrs. Dunagin, testified that she and her husband were visiting the Ropers in January, 1973, when Mrs. Teague came to see them and that during the visit Roper told Mrs. Teag-

ue that he needed an answer on the sprinkler system so that he could place the order. She said that Mrs. Teague said for him to go ahead and do what he thought was best. She also said that in the conversation Roper mentioned that it would take five years for the system to pay for itself. Mr. Dunagin testified, concerning the same conversation, that Roper said that "he figured in five years with using that hill top, they would pay for the sprinkler system, it would pay both parties concerned."

Both Roper and Mrs. Teague testified that Mrs. Teague was on the land a number of times and observed the work being done in levelling the land and installing the system. She did not object at that time.

Doug Goen, who was employed by Gifford-Hill, testified that the cost of the underground pipe was about $4,000.00 and the cost of the sprinkler was about $18,000.00. He testified that the sprinkler itself could be removed but that if it was moved very far it would have to be dismantled at a cost of about $3,000.00.

Roper testified that in order to put in the system he did extensive dirt work levelling a 65-acre hill. He flat broke the sod and floated the land. He said that the maize crop which he planted was the first crop on the 65-acre hill in 15 years and that that hill alone produced between eight and nine thousand dollars gross income. He added that with the sprinkler system he could double crop the land. Following the maize harvest, he planted Triticale, which was growing at the time of trial. He testified that the work he had done levelling the land and installing the underground pipe from the well had increased the land value $100.00 per acre.

On April 8, 1973, Mrs. Teague saw in the paper that a mortgage had been put on the land. The notice referred to a contractor's lien contract and deed of trust on the land signed by Mr. and Mrs. Roper to secure the cost of the underground pipe. In May, 1973, the installation of the system was completed. In June, 1973, Mrs. Teague had

her attorney write Mr. Roper a letter stating that he had placed a cloud on the title to the land and had turned the farming land into what amounted to a stock farm, and advising him that his lease would not be renewed for the calendar year beginning January 1, 1974.

Where testimony is in conflict the jury is entitled to accept all, part, or none of the testimony of any witness, or it may accept part of one witness's testimony and part of another. *Knight v. Hicks*, 505 S.W.2d 638 (Tex.Civ.App., Amarillo 1974, writ ref'd n. r. e.); *Reinke v. Thomas*, 369 S.W.2d 692 (Tex.Civ.App., Waco 1963, writ ref'd n. r. e.).

The question here is whether facts testified to, other than the parol lease itself, show that possession by the plaintiffs in 1973 was under a new agreement as opposed to possession by virtue of their right as holdover tenants under a year to year rental. We find that there was such evidence.

After considering all of the evidence, we conclude that the jury's finding that Mrs. Teague permitted the Ropers to remain on the land in 1973 under a five-year lease and the finding that the Ropers made permanent and valuable improvements in placing the underground pipe and adapting the land are supported by sufficient evidence.

We do not find in the other points of error asserted by appellant any error which amounted to such a denial of the rights of appellant as was reasonably calculated to cause or probably did cause the rendition of an improper judgment.

The undisputed evidence shows that four tracts of land involved in the lease had been rented together for a number of years and we overrule defendant's contention that improvements made on one tract could not remove a lease of all of the land from the requirements of the statute of frauds.

We find that the definition of valuable improvements was not error, however, it would not in any event result in an improper judgment because the trial court specifically limited the inquiry concerning valuable improvements to the underground pipe and adaptation of the land itself.

We find that the evidence concerning the 1970 construction of cattle pens was relevant to the course of dealings between the parties which was testified to at length by both plaintiff and defendant. Further, in the manner in which the issues were submitted, the jury could not have considered the 1970 improvements as part of the valuable improvements made pursuant to the five-year lease.

An invoice pertaining to the portable sprinkler system was properly admitted. Although the sprinkler system is not a permanent improvement, the circumstances of its purchase are relevant to the question of possession under the five-year lease. In addition other evidence relating to the same matter, including the contract of purchase and the testimony of the Gifford-Hill employee, was admitted without objection.

We have considered each of appellant's points of error and find no reversible error.

The judgment of the trial court is affirmed.