EXXON CORPORATION, Appellant,

v.

BREEZEVALE LIMITED, Appellee.

No. 05–98–02050–CV.

Court of Appeals of Texas, Dallas.

April 4, 2002.

430

David J. Beck, Beck Redden & Secrest, L.L.P., Houston, Nina Cortell, Haynes & Boone, L.L.P., Dallas, for Appellant.

Stephen D. Susman, Susman Godfrey, L.L.P., Houston, for Appellee.

Before Justices BRIDGES, FITZGERALD, and FARRIS.[1]

## OPINION

Opinion By Justice David F. FARRIS (Retired).

Exxon Corporation (Exxon) appeals the trial court's judgment following a jury verdict awarding Breezevale Limited (Breezevale) $34.3 million as damages for breach of an oral contract, $1 million for breach of a contract implied in law, and $3.495 million in attorneys' fees. In its first three issues, Exxon asserts (1) the evidence is legally and factually insufficient to support a finding that the parties reached an enforceable oral agreement, (2) the claimed agreement is not enforceable under the statute of frauds, and (3) the trial court incorrectly instructed the jury regarding the doctrine of promissory estoppel. In its

---

1. The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

final five issues, Exxon complains about the lost profits award, the attorneys' fees award, some of the trial court's evidentiary rulings, and the judgment being contrary to public policy.

Breezevale brings three issues in a cross appeal. Breezevale first contends the trial court erred in its calculation of interest on the breach of contract award. In two conditional cross-points, Breezevale complains of the trial court's dismissal of its breach of fiduciary duty claim by directed verdict and the trial court's exclusion of evidence.

For the reasons that follow, we reverse the trial court's award of $34.3 million on Breezevale's breach of contract claim, affirm the award of $3.495 million in attorneys' fees, and affirm the trial court's directed verdict on Breezevale's breach of fiduciary duty claim.[2]

## FACTUAL BACKGROUND

In the early 1990s, the Nigerian government opened its deepwater offshore to oil and gas exploration, inviting bids from international oil companies for deepwater blocks. Exxon submitted a bid requesting blocks 209 and 210. In June 1993, the Nigerian government formally awarded block 209 to Exxon. Exxon subsequently leveraged some of its interest in block 209, through trades and farm-ins, to acquire interests in other blocks that had been awarded to other companies.

This case arises from a dispute between Exxon and Breezevale, a company hired by Exxon to provide local assistance in its effort to procure exploration rights in Nigeria. Breezevale, a London-based corporation, operated in various countries in Europe, the Middle East, and Africa, including Nigeria. Exxon contacted Breeze-

vale in 1990, requesting its assistance with services such as arranging appointments, conducting briefings, obtaining information and technical data on available blocks of interest to Exxon, and speaking with government officials on Exxon's behalf. Breezevale provided these types of services to Exxon over a period of approximately eighteen months, with no formal agreement in place as to Breezevale's compensation for its services. As the business relationship progressed, the parties began negotiating the terms of a contract to formalize their relationship. Although Exxon initially pursued only a short-term services agreement with Breezevale, Breezevale expressed an interest in a more involved, long-term relationship in which Breezevale would share the risk and rewards of Exxon's Nigerian exploration. Representatives of Exxon and Breezevale met several times to discuss their business relationship.

The last of these meetings occurred on April 3, 1992. In this and previous meetings, the parties discussed both a services contract and a participation agreement. The parties discussed different options that would provide Breezevale with a participation interest in Exxon's Nigerian exploration and production, including a 2½ percent paid working interest, whereby Breezevale would pay 2½ percent of the costs of production and receive 2½ percent of the production profits. The parties' dispute as to whether an oral working interest agreement was reached at the April 3rd meeting became the basis for Breezevale's lawsuit against Exxon. Breezevale claimed Exxon offered, and it accepted, a 2½ percent working interest in all of Exxon's Nigerian oil operations. Exxon

**2.** Exxon does not appeal the portion of the trial court's judgment awarding Breezevale $1 million for breach of contract implied in law, acknowledging that Breezevale provided

services for which it should be compensated. Therefore, we express no opinion as to the validity of that portion of the judgment, and the $1 million award stands.

claimed an agreement on essential terms was never reached and it terminated negotiations with Breezevale before a contract was formed. Neither party disputes an agreement on the services contract was never reached.

The day after the April 3, 1992 meeting, Exxon's main contact at Breezevale, Habib Bou–Habib, traveled to Nigeria to speak with the Ministry of Petroleum on Exxon's behalf. Breezevale contends the trip was made at the request of Exxon; Exxon asserts it never requested nor authorized the visit. On April 9, 1992, Habib contacted Gerald Mudd, an Exxon representative, telling him to "[g]o open the champagne," because Exxon had been awarded a block. Block 209 was formally awarded to Exxon by the Nigerian government in June 1993.

On April 13, 1992, Exxon sent Breezevale a letter terminating its relationship with Breezevale and enclosing a $30,000 check to cover Breezevale's services. According to Mudd, Exxon had begun to have concerns about Habib's actions in Nigeria; consequently, Exxon decided to terminate the business relationship. Habib returned the check.

Breezevale sued Exxon, claiming, among other things, that Exxon breached its oral contract with Breezevale and its fiduciary duty to Breezevale. The case was tried to a jury. After Breezevale rested its case, Exxon moved for a directed verdict on all counts. The trial court granted Exxon's motion for a directed verdict with regard to Breezevale's breach of fiduciary duty claim, but denied the remainder of the motion. The jury found the parties had entered into an oral agreement that Breezevale would acquire a 2½ percent working interest in "any deepwater blocks awarded to Exxon by the government of Nigeria" and "any deepwater blocks in which Exxon obtains a farm-in from a private company by trading any interest

awarded to Exxon by the government of Nigeria." The jury valued the working interest at $34.3 million and additionally awarded Breezevale $1 million for services on an implied contract in law, and $3.495 million for attorneys' fees. The trial court entered judgment on the jury verdict. Exxon appealed.

## EXXON'S APPEAL

In its first three issues, Exxon attacks the jury's findings that an enforceable contract existed between the parties. Specifically, Exxon claims there is no or insufficient evidence to support the jury's finding that the parties reached an agreement on all the material terms necessary to the formation of an enforceable agreement. Additionally, Exxon contends that, as a matter of law, the claimed oral agreement is unenforceable under the statute of frauds. Finally, Exxon argues the trial court erred. in its submission of the jury question on promissory estoppel. Because we agree with Exxon that the statute of frauds applies, we assume without deciding the parties reached an oral agreement, and address Exxon's second issue regarding the applicability of the statute of frauds.

### Statute of Frauds

■ The statute of frauds, in section 26.01 of the Texas Business and Commerce Code, provides in pertinent part:

(a) A promise or agreement described in subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

. . .

(b) Subsection (a) of this section applies to:

(4) a contract for the sale of real estate;

. . .

(6) an agreement which is not to be performed within one year from the date of making of the agreement.

TEX. BUS. & COM.CODE ANN. § 26.01 (Vernon 1987). Whether a contract falls within the statute of frauds is a question of law to be decided by the court. *Gerstacker v. Blum Consulting Eng'rs, Inc.*, 884 S.W.2d 845, 849 (Tex.App.-Dallas 1994, writ denied).

In its second issue, Exxon contends the claimed agreement is not enforceable under the statute of frauds because it was not in writing, and (1) the agreement involved the transfer of working interests in oil and gas properties, which are interests in real estate, and (2) the agreement could not possibly have been performed within one year. Breezevale responds that the agreement does not involve real estate and could possibly have been performed within one year. Breezevale alternatively contends that, if this Court determines the statute of frauds applies, Breezevale avoids the application of the statute of frauds on the ground of either promissory estoppel or partial performance.

### *Interest in Real Estate*

██ It is undisputed that no written and signed working interest agreement existed between the parties. We, therefore, first turn to the issue of whether the alleged agreement conveyed an interest in real estate. Under Texas law, a conveyance of a working interest in oil and gas is a real property interest that subjects the agreement conveying the interest to the statute of frauds. *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 134 (Tex.App.-El Paso 1997, pet. denied); *EP Operating Co. v. MJC Energy Co.*, 883 S.W.2d 263, 267 (Tex. App.-Corpus Christi 1994, writ denied); *see also Procom Energy, L.L.A. v. Roach*, 16 S.W.3d 377, 381 (Tex.App.-Tyler 2000, pet. denied) (working interest and overriding royalty interest in oil and gas lease come within ambit of statute of frauds).

Conceding that the transfer of severable mineral interests in oil and gas leases are regarded as a sale of real estate under the Texas statute of frauds, Breezevale contends on appeal that its agreement with Exxon conveyed an interest in Nigerian Production Sharing Contracts (PSC), not a working interest in mineral production. According to Breezevale, a PSC differs from a Texas oil and gas lease in that the foreign state retains title to the minerals in the ground, giving the holder of the PSC only a contractual right to a share of the production. Consequently, an interest in a PSC is not an interest in real estate and is not subject to the statute of frauds.

██ Even if the conveyed interest were an interest in a PSC, the relevant issue in determining whether the contract involves real estate is not whether title to the minerals passes, but whether the interest is derived from rights to oil and gas in the ground, making the interest a realty interest subject to the statute of frauds. As the Texas Supreme Court has stated, "a right to land essentially implies a right to profits accruing from it, since, without the latter, the former can be of no value . . . [t]hus a devise of the profits of land, or even a grant of them, will pass a right to land itself." *Sheffield v. Hogg*, 124 Tex. 290, 77 S.W.2d 1021, 1028 (1934) (quoting *Green v. Biddle*, 21 U.S. 1, 76, 5 L.Ed. 547 (8 Wheat. 1823)); *see also United States Pipeline Corp. v. Kinder*, 609 S.W.2d 837, 839 (Tex.Civ.App.-Fort Worth 1980, writ

ref'd n.r.e.). Thus, a conveyance of an interest in the minerals that are produced from land, such as a working interest or a royalty interest, passes a right to the land itself. *Pecos Dev. Corp. v. Hydrocarbon Horizons, Inc.,* 803 S.W.2d 266, 267 (Tex. 1991) (overriding royalty interest in future production from unleased land is subject to statute of frauds; specifically disapproving court of appeals's holding to contrary).

■ Here, Breezevale argues Exxon offered it a 2½ percent working interest in its Nigerian production. One of Breezevale's experts, Patrick Rooney, testified the parties' use of the term "working interest" connoted agreement in part to share in the risks, losses, production, and profit of Exxon's mineral development. The PSC gave Exxon unrestricted right of ingress to and egress from "the Contract area,"and the right to lift and export oil from the allocated block. We conclude the interest in this case is derived from rights to oil in the ground and is a property interest subject to the statute of frauds.

■ Breezevale nonetheless contends the characterization a working interest carries under Texas law is irrelevant because the Texas statute of frauds does not apply to an agreement involving property located in a foreign country. According to Breezevale, the nature of a transferred interest is determined by the law of the place where the property is located; thus, the law of Nigeria should apply to the characterization of the agreement. Even if Breezevale is correct in claiming that Nigerian law should apply to determine the nature of the interest conveyed, Breezevale failed to give notice and prove Nigerian law in the trial court.

■ A party who intends to raise an issue about foreign law shall give notice and, at least thirty days before trial, furnish all parties copies of any written materials or sources the party intends to use as proof of foreign law. Tex.R. Evid. 203; *Long Distance Int'l, Inc. v. Telefonos de Mexico, S.A. de C.V.,* 49 S.W.3d 347, 350 (Tex.2001). If a party fails to give notice and prove foreign law as provided by the rule, the foreign law may not be applied. *In re Garcia–Chapa,* 33 S.W.3d 859, 863 (Tex.App.-Corpus Christi 2000, no pet.); *see also Pellow v. Cade,* 990 S.W.2d 307, 313 (Tex.App.-Texarkana 1999, no pet.) (absent proper invocation of foreign law by pleading and proof, Texas courts must presume foreign law to be same as that of Texas).

Because Breezevale did not give notice and prove up Nigerian law in the trial court, it cannot rely on *Hunt v. Coastal States Gas Producing Co.,* 583 S.W.2d 322, 325–26 (Tex.1979), to support its assertion that the language of the PSC should control the nature of the interest. In *Hunt,* the parties properly proved up Libyan law in a pretrial hearing that included testimony of international and foreign law experts. *Id.* at 327 (Steakley, J., dissenting). Conversely, in this case, Breezevale told the court there was "no need to invoke Nigerian law" and, consistent with that statement, did not submit any evidence of Nigerian law. Breezevale cannot now rely on Nigerian law to claim the conveyed interest was not an interest in real estate. *See Garcia–Chapa,* 33 S.W.3d at 863; *Pellow,* 990 S.W.2d at 313.

Because the interest is an interest in real estate, we conclude the oral agreement is subject to the statute of frauds.

### Exceptions to the Statute of Frauds

At trial, Breezevale sought to avoid the statute of frauds based upon two exceptions to the statute: promissory estoppel and partial performance. The jury answered "yes" to questions on both of these exceptions. Exxon contends the evidence

is legally and factually insufficient to support the jury's answers to both questions.

## Standard of Review

When considering the legal sufficiency of the evidence, we consider only the evidence and inferences tending to support the jury's finding, disregarding all evidence to the contrary. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992). If the record contains any evidence of probative force to support the jury's finding, the finding will be upheld. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997). When considering the factual sufficiency of the evidence, we assess all the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). When both legal and factual sufficiency points are raised, we first review legal sufficiency to determine if there is any evidence of probative value to support the jury's findings. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

## Promissory Estoppel

In its third issue, Exxon complains the trial court erred in its submission of the jury question on promissory estoppel because it was an incorrect statement of the law. Exxon also attacks the sufficiency of the evidence to support the jury's answer. Jury question No. 3 asked, "Did Breezevale reasonably rely upon the oral promise of Exxon, if any, to reduce its oral agreement to writing?"

Promissory estoppel applies to bar the application of the statute of frauds and allow the enforcement of an otherwise unenforceable oral agreement when (1) the promisor makes a promise that he should have expected would lead the promisee to some definite and substantial injury; (2) such an injury occurred; and (3) the court must enforce the promise to avoid the injury. *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex.1982); *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936 (Tex.1972). To invoke the application of promissory estoppel where there is an oral promise to sign an agreement, as in this case, the agreement that is the subject of the promise must comply with the statute of frauds. *"Moore" Burger*, 492 S.W.2d at 940 (op. on reh'g). That is, the agreement must be in writing at the time of the oral promise to sign it. *Sonnichsen v. Baylor Univ.*, 47 S.W.3d 122, 126 (Tex. App.-Waco 2001, no pet.); *Mann v. NCNB Tex. Nat'l Bank*, 854 S.W.2d 664, 668 (Tex. App.-Dallas 1992, no writ); *Beta Drilling, Inc. v. Durkee*, 821 S.W.2d 739, 741 (Tex. App.-Houston [14th Dist.] 1992, writ denied).

Breezevale first contends the law is unclear as to whether the doctrine of promissory estoppel may be applied in the absence of a written contract in existence at the time of the promise. However, we agree with the court in *Sonnichsen* that "the holding from *"Moore" Burger* is clear" that the agreement must be in writing at the time the promise is made. *Sonnichsen*, 47 S.W.3d at 126; *see also Mann*, 854 S.W.2d at 668 (where this Court held an agreement in writing at time of promise is required element of promissory estoppel). According to Breezevale, because Mudd told Habib at the April 3rd meeting that Exxon was going to memorialize the working interest agreement into an attachment to the draft service agreement, "there was every reason for Mr. Habib to believe this either had been done or could be done and [would be] ready to sign during their next meeting." Irrespective of what Habib believed, there is no evi-

dence either that (1) the attachment was ever prepared or (2) Mudd or any other Exxon representative told Habib the working interest agreement had *already* been prepared. Thus, there is no probative evidence in the record that the working interest agreement was in writing on April 3, 1992.

Pointing out that the promissory estoppel question submitted to the jury did not include the requirement that a writing exist when the promise was made, Breezevale argues Exxon waived any charge error by not submitting a substantially correct jury question. However, if there is no evidence to support one or more of the elements of the doctrine, it is irrelevant whether Exxon submitted a proper question. *See* Tex.R. Civ. P. 279 ("A claim that the evidence was legally or factually insufficient to warrant the submission of any question may be made for the first time after the verdict, regardless of whether the submission of such question was requested by the complainant.") Rather, the issue is whether the evidence supports the finding, including any deemed findings on elements not included in the question. *See Crosbyton Seed Co. v. Mechura Farms,* 875 S.W.2d 353, 363–64 (Tex.App.-Corpus Christi 1994, no writ); *see also Auto. Ins. Co. v. Davila,* 805 S.W.2d 897, 902 (Tex.App.-Corpus Christi 1991, writ denied) (element may not be deemed found by court if no evidence supports it).

 We conclude that, because there is no evidence there was a written working interest agreement in existence on April 3, 1992, there is no evidence to support the jury finding of promissory estoppel. We therefore overturn the jury's finding on Question No. 3.[3]

## *Partial Performance*

Breezevale also relies on the jury's affirmative answer to the question, "Did Breezevale partially perform the agreement, if any?" in arguing the doctrine of partial performance bars application of the statute of frauds in this case. Exxon contends there is no or insufficient evidence to support a finding of partial performance.

 Under the partial performance exception to the statute of frauds, contracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud. *Carmack v. Beltway Dev. Co.,* 701 S.W.2d 37, 40 (Tex.App.-Dallas 1985, no writ). The fraud arises when there is strong evidence establishing the existence of an agreement and its terms, the party acting in reliance on the contract has suffered a substantial detriment for which he has no adequate remedy, and the other party, if permitted to plead the statute, would reap an unearned benefit. *Id.; see also Hooks v. Bridgewater,* 111 Tex. 122, 229 S.W. 1114, 1116 (1921). The partial performance must be "unequivocally referable to the agreement and corroborative of the fact that a contract actually was made." *Wiley v. Bertelsen,* 770 S.W.2d 878, 882 (Tex.App.-Texarkana 1989, no writ) (citing *Chevalier v. Lane's, Inc.,* 147 Tex. 106, 213 S.W.2d 530, 533–34 (1948)). The acts of performance relied upon to take a parol contract out of the statute of frauds must be such as could have been done with no other design than

---

**3.** In its appellate brief, Breezevale also argues Exxon should be equitably estopped from relying on the statute of frauds because of its claims that Exxon misled Breezevale. The doctrine of equitable estoppel, being distinct from the doctrine of promissory estoppel, was never submitted to the jury. Breezevale thus waived any equitable estoppel claim. *See* Tex.R. Civ. P. 279; *Brown v. Bank of Galveston, N.A.,* 963 S.W.2d 511, 515 (Tex.1998).

to fulfill the particular agreement sought to be enforced; otherwise, they do not tend to prove the existence of the parol agreement relied upon by the plaintiff. *Teague v. Roper*, 526 S.W.2d 291, 293 (Tex. Civ.App.-Amarillo, 1975 writ ref'd n.r.e.) (citing *Francis v. Thomas*, 129 Tex. 579, 106 S.W.2d 257, 260 (1937)).

■ Exxon contends Breezevale's claim of partial performance is not "unequivocally referable" to the working interest contract because Breezevale's actions could be referable to the services contract. Breezevale does not dispute that it never paid Exxon any of the costs associated with a working interest in Exxon's blocks. The action on which Breezevale relies as evidence of its partial performance is Habib's trip to Nigeria on April 4, 1992.[4] Breezevale contends Habib's trip to Nigeria during this time period constituted sufficient partial performance to take the contract out of the statute of frauds because Habib went to Nigeria in reliance on Exxon's promise of a working interest in any block awarded. Exxon argues that such performance does not "show strong evidence establishing the existence of the [working interest] agreement and its terms," *see Carmack*, 701 S.W.2d at 40, and is more referable to the services agreement the parties were negotiating than the working interest agreement.

Applying the no-evidence standard of review, and viewing the evidence in the light most favorable to Breezevale, we find there is no evidence that Habib's actions in going to Nigeria were *unequivocally* referable to the working interest contract, because even Breezevale admits there was a services contract being negotiated between the parties and that it had been providing

Exxon with liaison services similar to those provided during the trip throughout the eighteen-month period. *See Teague*, 526 S.W.2d at 293 (performance must be such as could have been done with *no other design* than to fulfill particular agreement sought to be enforced); *see also Rodriguez v. Klein*, 960 S.W.2d 179, 186 (Tex.App.-Corpus Christi 1997, no pet.) (because party's performance was required under one or more of three agreements, including bill of sale, it could not be unequivocally referable to bill of sale); *Beta Drilling*, 821 S.W.2d at 741 (overturning jury finding on partial performance because appellee's employment services were not unequivocally referable to oral agreement for sale of securities). In a no-evidence review of whether the performance was "unequivocally referable," the relevant issue is not whether there is evidence that the performance could be referable to the contract which the party is trying to enforce; rather, it is whether there is evidence that the performance is *solely* referable to the contract. *See Teague*, 526 S.W.2d at 293; *Rodriguez*, 960 S.W.2d at 186.

Habib's actions in traveling to Nigeria and speaking with the government officials on Exxon's behalf were consistent with the services Breezevale had performed in the previous eighteen months and could be referable to the services agreement. Further, nothing in Habib's trip to Nigeria, even if made at the request of Exxon, showed "strong evidence establishing the existence of the [working interest] agreement and its terms." *See Carmack*, 701 S.W.2d at 40. We conclude there is no evidence that Breezevale's performance was unequivocally referable to the working interest agreement.

---

4. Any performance by Breezevale in reliance on the contract necessarily had to occur between April 3, 1992, the date of the agreement, and mid-April, when Exxon terminated the relationship by letter, because only during this time could Breezevale have reasonably relied on the existence of an agreement.

■ Moreover, even assuming there was evidence that Breezevale's actions were unequivocally referable to the working interest agreement, the doctrine of partial performance also requires that the party acting in reliance on the agreement suffer a substantial detriment for which there is no adequate remedy. *See Hooks,* 229 S.W. at 1116; *Carmack,* 701 S.W.2d at 40. If Breezevale were successful in removing the oral agreement from the statute of frauds because of partial performance, Breezevale would be entitled to only reliance damages. *See Magcobar N. Am. v. Grasso Oilfield Servs., Inc.,* 736 S.W.2d 787 (Tex.App.-Corpus Christi 1987) (court's holding that party may recover reliance damages and not breach of contract damages in case where promissory estoppel takes case out of statute of frauds is consistent with equity, the principle underlying all exceptions to statute of frauds), *writ dism'd by agr.,* 754 S.W.2d 646 (Tex.1988); *see also Adams v. Petrade Int'l, Inc.,* 754 S.W.2d 696, 708 (Tex.App.-Houston [1st Dist.] 1988, writ denied) (relying on "settled law" that party's damages based on promissory estoppel as exception to statute of frauds are not measured by profits that reliance led him to expect, but limited to amount necessary to compensate party for loss already suffered). Breezevale's reliance damages would encompass only the services Habib performed during his April trip to Nigeria. *See Fretz Constr. Co. v. Southern Nat'l Bank,* 626 S.W.2d 478, 483 (Tex.1981) (reliance damages are amount necessary to restore plaintiff to position he would have been in had he not acted in reliance on promise). We conclude that because Breezevale received $1 million on its contract implied in law claim, it had an adequate remedy as a matter of law. *Cf. Carmack,* 701 S.W.2d at 40 (in analyzing partial performance of Beltway, court noted Beltway had no other adequate remedy because broker could not

recover for same services on implied contract, quasi contract, or quantum meruit theory); *Wiley,* 770 S.W.2d 878, 882 (if person receives payment for services, those services will not constitute partial performance as exception to statute of frauds).

Because there is no evidence that Breezevale's partial performance was unequivocally referable to the working interest agreement, and because Breezevale did not suffer a substantial detriment for which it had no adequate remedy, there is no evidence to support the jury's finding on partial performance. We overturn the jury's finding to Jury Question No. 4.

### Attorneys' Fees

■ Exxon contends if the award for breach of contract is reversed, this Court must likewise reverse the trial court's award of $3.495 million in attorneys' fees. Breezevale responds that even if this Court reverses the breach of contract claim, it is still entitled to attorneys' fees on its $1 million award for the contract implied in law, or quantum meruit, claim. We agree with Breezevale.

Exxon does not appeal the jury's finding that Breezevale performed compensable services in the amount of $1 million, nor does it argue attorneys' fees are not recoverable for the cause of action underlying the $1 million award. Rather, Exxon asserts Breezevale cannot recover attorneys' fees based on the award because Breezevale claimed, in a pretrial hearing, that it was not seeking compensation for services rendered. According to Exxon, because Breezevale could not have expended attorney time and expenses on a claim it disavowed, there would be no evidence to support an award of attorneys' fees on that basis. Exxon further claims there could have been no presentment of a claim that Breezevale denied it was seeking.

■ The fact that Breezevale stated in a pretrial hearing it was not seeking compensation for services rendered is irrelevant in light of the fact that the trial court submitted a jury question on the issue, which Exxon does not . appeal. Because Exxon did not complain of the trial court's submission of the question and the jury's affirmative answer to it, it cannot now complain the issue was not raised and litigated at trial. Further, because the issues involved in the quantum meruit claim are necessarily interrelated with Breezevale's breach of contract claim, we also decline to find there was no presentment of the attorneys' fees claim. The record shows that, after receiving the letter from Exxon terminating the relationship, Breezevale communicated with Exxon regarding its belief that it had a valid contract with Exxon, that Exxon should fulfill the contract, and that it had performed valuable services for Exxon. We conclude this is sufficient evidence of presentment. *See Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981) (no particular form of presentment required); *see also Criton Corp. v. Highlands Ins. Co.*, 809 S.W.2d 355, 358 (Tex. App.-Houston [14th Dist.] 1991, writ denied) (holding oral request to tender full performance under contract, which was refused, sufficient to establish presentment).

Exxon does not dispute that attorneys' fees may be awarded for claims arising out of quantum meruit, or that the quantum meruit claim is not so interrelated with the contract claim as to be more or less inseparable. *See Weitzul Constr., Inc. v. Outdoor Environs*, 849 S.W.2d 359, 366 (Tex. App.-Dallas 1993, writ denied). Therefore, because attorneys' fees are authorized on the quantum meruit cause of action,

Breezevale may recover the total amount of attorneys' fees the trial court awarded. *See id.*

## Conclusion

Because we conclude the statute of frauds applies to render the oral agreement unenforceable, we need not reach Exxon's other issues. We reverse the jury's finding to Question No. 1 and its award of $34.3 million. We render judgment that Breezevale take nothing on its claim for breach of an oral contract. We affirm the $3.495 million award of attorneys' fees.

## BREEZEVALE'S CROSS APPEAL

Breezevale brings three issues in a cross appeal. Because of our disposition of Exxon's appeal, we address only one of Breezevale's issues.

In its second issue, Breezevale contends the trial court erred in granting a directed verdict on Breezevale's breach of fiduciary duty claim based on a two-year statute of limitations. In a "reply point and conditional cross point,"[5] Exxon contends that even if the trial court erred in granting the directed verdict based on the statute of limitations, the breach of fiduciary duty claim was still properly dismissed because there was no evidence of a fiduciary relationship. We agree with Exxon's conditional cross point.

■ A court may direct a verdict if no evidence of probative force raises a fact issue on the material issue. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994). On review, we examine the evidence in the light most favorable to the party against whom the verdict was ren-

---

5. Because the trial court denied Exxon's motion for directed verdict on Breezevale's claim that it had enjoyed a "special relationship of trust and confidence" with Exxon, Exxon conditionally appeals this ruling in the event we reach the issue of whether there was a special relationship.

dered, disregarding all contrary evidence and inferences. *Id.; Rodriguez v. United Van Lines, Inc.*, 21 S.W.3d 382, 383 (Tex. App.-San Antonio 2000, pet. denied). When no evidence of probative force on an ultimate fact element exists, or when the probative force of the evidence is so weak that only mere surmise or suspicion is raised as to the existence of essential facts, the trial court has the duty to instruct the verdict. *Villarreal v. Art Inst. of Houston, Inc.* 20 S.W.3d 792, 796 (Tex.App.-Corpus Christi 2000, no pet.). The reviewing court may affirm a directed verdict even if the trial court's rationale for granting the directed verdict is erroneous, provided the directed verdict can be supported on another basis. *Id.*

There are two types of fiduciary relationships-formal and informal. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 593–94 (Tex.1992). Formal fiduciary relationships arise as a matter of law, and include the relationships between attorney and client, principal and agent, partners, and joint venturers. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex.1998). Informal fiduciary relationships arise from "a moral, social, domestic or purely personal relationship of trust and confidence, generally called a confidential relationship." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex.1998). Confidential relationships may arise when one party has dealt with another in a certain manner for a long period of time such that one party is justified in expecting the other to act in its best interest, *Morris*, 981 S.W.2d at 674, and in cases where "influence has been acquired and abused, in which confidence has been reposed and betrayed." *Associated Indem. Corp.*, 964 S.W.2d at 287. However, to give full force to contracts, we do not recognize such a relationship lightly.

*Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex.App.-Waco 2000, pet. denied) (citing *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962)). To impose such a relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the suit. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex.1997). The fact that one businessman trusts another and relies on another to perform a contract does not give rise to a confidential relationship, because something apart from the transaction between the parties is required. *Crim*, 823 S.W.2d at 594. Although the existence of a confidential relationship is ordinarily a question of fact, where there is no evidence to establish the relationship, it is a question of law. *Seymour v. Am. Engine & Grinding Co.*, 956 S.W.2d 49, 60 (Tex.App.-Houston [14th Dis.] 1996, writ denied); *Kline v. O'Quinn*, 874 S.W.2d 776, 786 (Tex.App.-Houston [14th Dist.] 1994, writ denied).

Breezevale first asserts that a formal fiduciary relationship existed because it was partners with Exxon. However, we have held there was no working interest agreement between the parties because any oral agreement violated the statute of frauds. Therefore, there is no evidence the parties were working interest partners. *See Schlumberger*, 959 S.W.2d at 176 (partnership consists of express or implied agreement containing four required elements: (1) community of interest in venture, (2) agreement to share profits, (3) agreement to share losses, and mutual right of control or management of enterprise). Without an agreement, there is no evidence the parties were partners and no evidence to support Breezevale's argument that a formal fiduciary relationship existed arising from the partnership.

Breezevale also argues it submitted evidence that Breezevale and Exxon

had developed a relationship of trust and confidence and there was some evidence of an informal fiduciary relationship between the parties. It relies on evidence that before Exxon and Breezevale began the dealings at issue in this suit, Breezevale had a ten-year distributorship relationship with Exxon Chemical in Nigeria. However, the evidence shows Exxon Chemical is a separate Exxon affiliate, and nothing in the record indicates this relationship was anything more than an arms-length business relationship. *See Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 568 (Tex. App.-Dallas 1989, no writ) (plaintiff could not bootstrap prior relationship with two separate entities to claim twenty-six year confidential relationship with defendant hospital).

Breezevale also relies on evidence it "trusted Exxon's numerous promises that an agreement ... would be forthcoming;" it clearly informed Exxon it wanted a long-term relationship; it shared with Exxon confidential information it learned from the Nigerian officials regarding the bidding process; and Exxon requested that Breezevale work exclusively for Exxon. Even if true, these facts are not evidence of an informal fiduciary relationship. Breezevale's claim that it subjectively trusted Exxon to provide it a working interest agreement is insufficient to impose fiduciary obligations on Exxon as a matter of law. Mere subjective trust does not transform arms-length dealing into a fiduciary relationship. *Schlumberger*, 959 S.W.2d at 177; *Crim*, 823 S.W.2d at 595; *see also Tyra v. Woodson*, 495 S.W.2d 211, 213 (Tex.1973) ("[T]he fact that one businessman trusts another, and relies upon his promise to carry out a contract, does not create a constructive trust ... [t]o hold otherwise would render the Statute of Frauds meaningless.") The record shows the parties had an arms-length relation-

ship, with each party separately represented by its own counsel. There is no evidence of a long-term relationship apart from the parties' negotiations for the services contract and working interest agreement. *See Crim*, 823 S.W.2d at 594. We conclude that, because the record contains no evidence of a fiduciary relationship between the parties, the trial court did not erred in granting Exxon's motion for directed verdict on Breezevale's breach of fiduciary duty claim. Furthermore, the trial court erred in denying Exxon's motion for directed verdict on Breezevale's claim that it had a "special relationship of trust and confidence" with Exxon. Consequently, we find no merit in Breezevale's second issue in its cross appeal.

We reverse the trial court's award of $34.3 million against Exxon for breach of contract and affirm the remaining portions of the trial court's judgment that are the subject of this appeal.