

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-08-00283-CV

_____

**CLARENCE CAMPBELL, CHARLES CORLEY,
AND SUSAN AGUILAR,**

**Appellants**

**v.**

**NORTHWESTERN RESOURCES COMPANY AND
TEXAS WESTMORELAND COAL COMPANY,**

**Appellees**


_____

**From the 87th District Court
Leon County, Texas
Trial Court No. 0-05-511**

_____

## MEMORANDUM OPINION

_____

Clarence Campbell, Charles Corley, and Susan Aguilar ("the Campbells") sued Northwestern Resources Company and Texas Westmoreland Coal Company[1] ("Northwestern") for breach of contract and fraudulent inducement. In two issues, the Campbells challenge the trial court's granting of Northwestern's traditional and no-

---

[1]     Westmoreland purchased Northwestern.

evidence motions for summary judgment. We affirm in part and reverse and remand in part.

## FACTUAL BACKGROUND

Northwestern's predecessor obtained a coal lease on property later inherited by the Campbells. Virginia Robertson of Northwestern approached the Campbells about an amended lease. In her deposition, Robertson testified that the Campbells were "only [] willing to sign a 10-year extension with a 10-year option that required an additional bonus payment," specifically, a $200 per acre bonus. She accepted this request, but no agreement was signed. The Campbells' attorney became involved for a period of time, during which he suggested a guaranteed royalty. Northwestern agreed to make a $400,000 guaranteed production royalty payment. Thus, Robertson told the Campbells that Northwestern would not pay the bonus unless *no mining had begun*.

The Campbells believed that the bonus would be paid if mining *was being conducted*. In an affidavit, Campbell stated that he wanted to place cattle on the property. He negotiated with Robertson such that Northwestern would be off the property by 2004 or would pay a $200 per acre bonus, "regardless of the reason they were on the land." Campbell stated that the parties knew he would not sign the lease without the bonus. Before he signed the lease, Robertson read a provision that led Campbell to believe that a bonus would be paid if Northwestern had not vacated the land by 2004. In his deposition, Campbell testified that Robertson told him that the bonus was in the lease because he had asked for it.

Specifically, the Campbells believed that Paragraph 6 of the lease, entitled "DELAY RENTAL," provided for the bonus: "Upon execution of this amendment, see *Addendum*, *Paragraph 4*, Lessee shall pay Lessor, as a bonus payment, the sum of Two-Hundred Dollars ($200.00) per acre for each and every acre of the Premises herein described." Paragraph 4 of the addendum provides: "[U]pon exercise of its option to extend the Primary Term, if so exercised. The option to extend the Primary Term will obligate Lessee to pay the said bonus unless the premises is [sic] released as provided in paragraph 16." Jerome Kirchmeier of Northwestern interpreted the lease to mean that the bonus would be paid if no mining had been conducted. He believed that "everything [the Campbells] wanted is in the lease." The parties do not dispute that mining operations continued after the primary term ended in 2004.

## TRADITIONAL SUMMARY JUDGMENT

In issue one, the Campbells argue that the trial court erroneously granted summary judgment on Northwestern's affirmative defense of statute of frauds because Northwestern verbally agreed to provide a bonus and said agreement falls under the partial performance exception to the statute of frauds.[2] *See* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(5)-(7) (Vernon 2009) (statute of frauds).

---

[2] In the trial court, the Campbells also argued that Northwestern breached paragraph 6 of the lease. Northwestern's no-evidence motion challenged this claim. When granting Northwestern's motions, the trial court "found" that: (1) the lease is unambiguous; (2) the lease did not require performance or partial performance by the Campbells; (3) there was no evidence that the Campbells were fraudulently induced to enter the lease; and (4) the lease falls within section 26.01 of the Business and Commerce Code. *But see Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex. 1994) ("findings of fact and conclusions of law have no place in a summary judgment proceeding."). The Campbells do not challenge whether Northwestern breached paragraph 6 of the lease or whether summary judgment was proper as to this claim.

We review a trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In reviewing a summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) (citing *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam); *City of Keller v. Wilson*, 168 S.W.3d 802, 822-24 (Tex. 2005)). We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the movant. *See Goodyear Tire*, 236 S.W.3d at 756 (citing *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam); *Spates*, 186 S.W.3d at 568).

"[C]ontracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud." *Exxon Corp. v. Breezevale, Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied). To establish partial performance, a party must show: (1) payment of consideration; (2) possession of the property by the buyer; and (3) permanent and valuable improvements by the buyer with the consent of the seller or other facts demonstrating that the buyer would be defrauded if the agreement were not enforced. *Lovett v. Lovett*, 283 S.W.3d 391, 393-94 (Tex. App.—Waco 2008, pet. denied). "[A] vendor may be entitled to enforce an oral contract if he shows performance of the contract by delivery of possession to the purchaser and a detrimental change of position for which the vendor has no adequate remedy." *Carmack v. Beltway Dev. Co.*, 701 S.W.2d 37, 40 (Tex. App.—Dallas 1985, no writ).

The partial performance must be "unequivocally referable to the agreement and corroborative of the fact that a contract actually was made." The acts of performance relied upon to take a parol contract out of the statute of frauds must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced; otherwise, they do not tend to prove the existence of the parol agreement relied upon by the plaintiff.

*Breezevale*, 82 S.W.3d at 439-40.

Citing *Lincoln v. Kirk*, 243 S.W. 671 (Tex. Civ. App.—Fort Worth 1922, writ dism'd w.o.j), the Campbells argue that they: (1) performed by providing the property to Northwestern; and (2) relied on Northwestern's promises to their detriment, being unable to place cattle on the property and receiving no bonus payment to offset this damage.

In *Lincoln*, Kirk and Pruett agreed to drill two wells in exchange for one-fifth of Lincoln's interest in an oil and gas lease. *See Lincoln*, 243 S.W. at 672. They sued when Lincoln failed to convey the one-fifth interest, after they had drilled the wells from which Lincoln had begun receiving payments. *Id.* The Court held:

For, while the contract was oral, and an oral contract to convey an interest in a mineral lease is a contract to convey real estate, and therefore in violation of the statute of frauds, yet it is well settled that a parol contract for the purchase of real estate is taken out of the statute of frauds where it is shown that possession under the contract was delivered and valuable and permanent improvements are made pursuant thereto.

*Id.* at 673-74. Unlike *Lincoln*, this case does not involve partial performance of a verbal agreement.

In *Cox v. First River Place Reserve*, No. 03-01-00601-CV, 2002 Tex. App. LEXIS 7761 (Tex. App.—Austin Oct. 31, 2002 pet. denied) (not designated for publication), Reserve

agreed, in a letter of intent, to pay a total commission of six percent to Cox and Duncan. *See Cox*, 2002 Tex. App. LEXIS 7761 at *3. The written contract, however, provided a four percent commission. *Id*. at *4. Cox sued, alleging breach of the agreement by failure to pay his half, three percent, of the six percent commission. *Id*. at *5. The trial court granted summary judgment in favor of Reserve. *Id*. at *6-7. On appeal, Cox argued, in part, that "payment of the two-percent commission, combined with other evidence, is a partial performance of the obligation to pay three percent that renders the promise to pay three percent enforceable." *Id*. at *14. The Austin Court disagreed:

> The summary judgment evidence is clear, however, that Reserve paid the two-percent commission to satisfy its express obligation under the August 1994 sale contract. *This payment was not partial performance of an oral contract but full performance of a written agreement*. Whether that written agreement was fraudulently induced is a separate issue. But there is no dispute as to the purpose of Reserve's payment of the two-percent commission.

*Id*. at *14-15 (emphasis added).

Under the written lease, Northwestern received possession of the property from the Campbells and commenced mining operations. Performance was taken to fulfill the written lease agreement, not an alleged verbal agreement to make a bonus payment. *See Cox*, 2002 Tex. App. LEXIS 7761, at *14-15; *see also Breezevale,* 82 S.W.3d at 439-40. Accordingly, the performance in this case is not "unequivocally referable" to the verbal agreement. *Breezevale,* 82 S.W.3d at 439-40. The Campbells have not produced evidence raising a fact issue as to partial performance. *See Lovett*, 283 S.W.3d at 393-94. The trial court properly granted Northwestern's motion for partial summary judgment on the Campbell's breach of contract claim. We overrule issue one.

## NO-EVIDENCE SUMMARY JUDGMENT

In issue two, the Campbells contend that the trial court erroneously granted summary judgment on their fraudulent inducement claim.

We review a no-evidence summary judgment under the same standard of review as a directed verdict. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006). "We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Id.* at 582. A no-evidence summary judgment will be defeated if the non-movant produces some evidence "raising an issue of material fact" on the elements challenged by the movant. *Id.*

Fraudulent inducement is established by: (1) a material misrepresentation; (2) which was false; (3) which was known to be false when made or was made recklessly as a positive assertion without knowledge of its truth; (4) which was intended to be acted upon; (5) which was relied upon; and (6) which caused injury. *Fletcher v. Edwards*, 26 S.W.3d 66, 77 (Tex. App.—Waco 2000, pet. denied). In its no-evidence motion, Northwestern challenged elements two, three, and six.[3]

Viewing the evidence in the light most favorable to the Campbells, they presented evidence that Northwestern agreed to pay the requested bonus. Robertson

---

[3]     On appeal, Northwestern challenges the reliance element of the Campbells' fraudulent inducement claim. However, this challenge was not raised in the trial court. *See Nat'l Cafe Servs., Ltd. v. Podaras*, 148 S.W.3d 194, 196 n. 1 (Tex. App.—Waco 2004, pet. denied) (on appeal from summary judgment, "[w]e consider only those grounds 'the movant actually presented to the trial court' in the motion") (quoting *Fletcher v. Edwards*, 26 S.W.3d 66, 74 (Tex. App.—Waco 2000, pet. denied) (quoting *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996))).

knew that the Campbells were unwilling to sign the lease without this bonus. Although she testified that the bonus was replaced by a guaranteed payment, she also testified that a bonus would be paid if Northwestern *was not* mining the property at the end of the primary term. The Campbells, however, understood that the bonus was to be paid if Northwestern *was* mining the property at the end of the primary term. In fact, Campbell stated that he wanted to place cattle on the property; thus, he did not want to sign the amended lease. He requested the bonus and Robertson assured him, before he signed the lease, that the lease provided for the bonus and led him to believe that paragraph 6 of the lease contained the bonus that he had requested. We conclude that the Campbells presented some evidence raising an issue of material fact on the elements challenged by Northwestern. *See Tamez*, 206 S.W.3d at 582. We sustain issue two.

We affirm the trial court's judgment as to the Campbell's breach of contract claim. We reverse the trial court's judgment as to the Campbell's fraudulent inducement claim and remand this cause to the trial court for further proceedings consistent with this opinion.

FELIPE REYNA
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
     (Chief Justice Gray concurring with note)*
Affirmed in part; reversed and remanded in part
Opinion delivered and filed November 4, 2009
[CV06]

\*       (Chief Justice Gray concurs in the judgment.  A separate opinion will not issue.  He notes, however, that by joining the judgment no inference can or should be made about the propriety of the claim of fraudulent inducement.  We can answer only those limited issues presented to us.  This is particularly true with regard to a no-evidence summary judgment.)