**Opinion issued December 30, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00855-CV

_____

**DERWIN TATUM, Appellant**

**V.**

**WELLS FARGO HOME MORTGAGE, INC. AND
FEDERAL HOME LOAN MORTGAGE CORPORATION, Appellees**

On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Case No. 10-DCV-182578

## MEMORANDUM OPINION

Appellant Derwin Tatum appeals an adverse take-nothing summary judgment in his suit against appellees Wells Fargo Home Mortgage, Inc. and Federal Home Loan Mortgage Corporation ("Freddie Mac") for wrongful

foreclosure, breach of contract, fraud, and declaratory judgment. In three issues, Tatum challenges: (1) the summary judgment; (2) an award of attorney's fees; and (3) an interlocutory order that required Tatum to make monthly payments into the court's registry while the suit was pending.

We affirm the trial court's take-nothing summary judgment in favor of the appellees and the award of attorney's fees as to Wells Fargo. We modify the judgment to eliminate the award of attorney's fees to Freddie Mac, and we vacate the trial court's order of "adequate-protection" payments, which we conclude is a void injunction. Accordingly, we remand the case to the trial court to determine how much money Tatum paid under the void injunction and to enter an order refunding those amounts to him.

## Background

In March 2001, Tatum obtained a mortgage loan from Wells Fargo in the amount of $221,350.00 to buy a house in Richmond, Texas. The mortgage documents included a promissory note and a deed of trust securing the loan with a lien on the property.

The promissory note required Tatum to make monthly payments and provided that failure to do so would constitute a default. The note provided for late charges in the event of overdue payments and acceleration of the debt if Tatum defaulted. In the event of default and acceleration, Wells Fargo would have the

right to reimbursement for costs of enforcing the note, including attorney's fees. At the bottom of the note, just above Tatum's signature and in boldface capital letters, appeared the following words:

> **THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**
>
> **THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

The deed of trust similarly required Tatum to make monthly payments under the note. The deed also provided for acceleration of the note should a default fail to be timely cured, and in that situation Wells Fargo would be entitled to collect expenses it incurred, including reasonable attorney's fees.

Both the note and the deed required written notice of default to be sent to Tatum "prior to acceleration following [his] breach of any covenant or agreement." The deed required that any such notice apprise Tatum of the alleged default and what he could do to cure it, and it specified that such a notice "shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means." The notices were to be sent to the address of the house in Richmond or any other address properly designated by Tatum.

For approximately eight years, Tatum made payments as they came due, but he fell behind when he and his wife divorced. Wells Fargo sent Tatum notices of default and intent to accelerate on September 14, 2009, October 18, 2009, and March 2, 2010. The March 2010 notice was sent by certified mail. These notices stated the amount of the delinquency, including late fees, as applicable. Duplicate notices were sent to Tatum at the Richmond house and at another address in Houston, Texas. These notices stated that the loan was "in default," and they warned that unless "the payments on your loan can be brought current" within one month, "it will become necessary to accelerate your Mortgage Note and pursue the remedies provided for in your Mortgage or Deed of Trust." The letters also stated that if "funds are not received by the above referenced date," Wells Fargo would accelerate the loan and begin foreclosure proceedings.

On April 1, 2010, notice was sent to Tatum that payment of the debt had not been received and Wells Fargo had elected to accelerate the maturity of the debt. The notice stated that the house would be sold at auction on Tuesday, May 4, 2010, in accordance with the provisions in the deed of trust and as provided in an enclosed "Notice of Substitute Trustee Sale." Tatum contends that between mid-April and early July 2010, he orally negotiated a loan modification with Wells Fargo, and in reliance on that modification he paid Wells Fargo an additional $10,900.

4

Wells Fargo sold the property to Freddie Mac for $185,318.70. In June 2010, Freddie Mac filed a forcible entry and detainer suit to gain possession of the property, which Tatum continued to occupy. The following month, Freddie Mac's attorney sent Tatum a notice of lease termination demanding possession and instructing him to vacate the house. That same month, Wells Fargo issued a check to Tatum for $10,900 "for misapplication reversal."

Tatum filed his own suit against Wells Fargo and Freddie Mac to stop the forcible entry, set aside the foreclosure sale, and for a declaratory judgment, temporary restraining order, and temporary injunctions. The petition was only served on Freddie Mac, which filed its answer. Wells Fargo later voluntarily appeared and filed its answer. It also counterclaimed for attorney's fees as sanctions for the filing of a frivolous lawsuit. A month later, Freddie Mac filed a motion to substitute counsel, at which point both defendants were represented by the same attorneys.

Wells Fargo and Freddie Mac filed a "motion for adequate protection," an equitable remedy employed by bankruptcy courts to require debtor-mortgagors to make monthly payments for the benefit of the mortgagee. *See, e.g.*, *In re DeSardi*, 340 B.R. 790, 797 (Bankr. S.D. Tex. 2006). Tatum opposed this motion, arguing in part that Wells Fargo and Freddie Mac had not met the standard for imposition of an injunction. The trial court granted the motion and ordered Tatum to pay $1,950

into the registry of the court on the first day of each month "during the pendency of this civil action."

In May 2013, Tatum filed his first amended petition in which he pleaded for (1) temporary injunctive relief, (2) a declaratory judgment regarding the alleged oral modification and associated attorney's fees, (3) breach of the alleged oral contractual modification, (4) statutory and common-law fraud, and (5) wrongful foreclosure. The appellees moved for summary judgment on both traditional and no-evidence grounds, seeking dismissal of all Tatum's claims and an award of attorney's fees. Tatum responded in opposition, with evidence, but after a hearing the trial court granted the motion for summary judgment and awarded attorney's fees of $44,594.28. Tatum filed a motion for new trial reasserting arguments that the award of attorney's fees was improper. The trial court denied the motion for new trial, and Tatum appealed.

**Analysis**

On appeal, Tatum challenges the trial court's grant of a take-nothing summary judgment in favor of Wells Fargo and Freddie Mac, the award of attorney's fees, and the interlocutory order that required him to make payments into the court's registry during the pendency of this case.

## I.    Summary judgment

In his first issue, Tatum argues that the trial court erred in granting summary judgment in favor of Wells Fargo and Freddie Mac. The appellees supported their motion with both traditional and no-evidence grounds. Among other things, they argued that (1) there was no evidence of damages because Tatum's debt exceeded the value of the property at foreclosure, (2) there was no evidence of any element of fraud, (3) the contract claims were barred by the statute of frauds and language in the promissory note, (4) the required notices were conclusively proved, and (5) the claims for injunctive and declaratory relief fail because the other claims lacked legal or factual support. Finally, they sought attorney's fees pursuant to the deed of trust. They later supplemented the motion with an affidavit from counsel and billing records to support the fee request.

Tatum responded and provided his own affidavit as summary-judgment evidence. He averred that he did not know about the foreclosure until he received notice of the eviction suit, he had negotiated an oral modification to the loan, and he had $70,000 in accrued equity in the house. He attached to his affidavit several letters that he purportedly sent to Wells Fargo in furtherance of a loan modification. In his affidavit, he refers to the attachments—i.e., the letters or memo he wrote—but he does not attest that he actually transmitted them to Wells Fargo. The documents do not themselves establish whether and to whom they were

7

sent, as two of the three documents are directed "To Whom It May Concern," with no indication within the document that it may concern an agent or employee of Wells Fargo. As to the request for attorney's fees, Tatum argued that Wells Fargo and Freddie Mac did not file suit or a counterclaim seeking attorney's fees and that the fee request was not reasonable for several reasons including that they did not segregate the fees between the two defendants.

We review de novo a trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When, as in this case, a trial court's order granting summary judgment does not specify the grounds relied upon, "the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000). In addition, when there are multiple grounds for summary judgment and the order does not specify which was relied upon to render the summary judgment, the appellant must negate all grounds on appeal. *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993)). "If summary judgment may have been rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed." *Id.* (citing *Holloway v. Starnes*, 840 S.W.2d 14, 23 (Tex. App.—Dallas 1992, writ denied)).

The party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). A genuine issue of material fact exists if the nonmovant produces evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *See Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014) (per curiam).

A no-evidence motion for summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006). A party may move for no-evidence summary judgment if, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which the nonmovant would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The motion must state the elements as to which there is no evidence. *Id.* The reviewing court must grant the motion unless the nonmovant

produces summary-judgment evidence raising a genuine issue of material fact. *Id.*; *see Mack Trucks*, 206 S.W.3d at 582.

### A. Wrongful foreclosure

Wells Fargo and Freddie Mac sought summary judgment as to Tatum's wrongful-foreclosure claim on the grounds that there was no evidence of the element of damages. "A plaintiff seeking damages for wrongful foreclosure must show that (1) an irregularity in the foreclosure sale (2) caused the plaintiff damages." *Houston Omni USA Co. v. Southtrust Bank Corp.*, No. 01-07-00433-CV, 2009 WL 1161860, at *6 (Tex. App.—Houston [1st Dist.] Apr. 30, 2009, no pet.) (mem. op.) (citing *Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982)). The "correct measure of damages" for wrongful foreclosure is "the difference between the value of the property in question at the date of foreclosure and the remaining balance due on the indebtedness." *C & K Invs. v. Fiesta Grp., Inc.*, 248 S.W.3d 234, 254 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Farrell v. Hunt*, 714 S.W.2d 298, 299 (Tex. 1986)).

In response to the motion for summary judgment, Tatum averred in his affidavit that after falling behind on his payments, he "entered into conversations pertaining to a contemplated modification agreement." He attested that he made payments totaling $10,900. He stated: "In addition to the fact that the equity in the home was over $70,000.00, I was only about 3 or 4 payments behind on the note at

10

the time that I completed the loan modification applications." He also averred that Wells Fargo sent him a check for $10,900 after he filed suit, but the check was not honored when he tried to deposit it.

A conclusory statement in an affidavit is not sufficient to raise a fact issue or defeat a no-evidence motion for summary motion. *See, e.g.*, *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996). A conclusory statement is one which does not provide the underlying facts to support the conclusion. *See, e.g.*, *Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 308 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Tatum's passing mention that "the equity in the home was over $70,000.00" was the only allusion to damages for wrongful foreclosure in his summary-judgment evidence. He did not provide any underlying facts to support his assertion that he had $70,000 of equity in the home. Specifically, he made no mention of the value of the house or the amount owed on the mortgage at the time of foreclosure, nor did he provide any factual basis for determining either value. Such statements "are not credible, nor susceptible to being readily controverted." *Ryland Grp.*, 924 S.W.2d at 122. Accordingly, his statement regarding the equity in the home was conclusory and inadequate to defeat the no-evidence motion for summary judgment. Accordingly, we conclude that the trial court correctly granted summary judgment as to the wrongful-foreclosure claim.

**B. Statutory and common-law fraud**

Wells Fargo and Freddie Mac also sought summary judgment on the statutory and common-law fraud claims. In particular, they argued that Tatum had no evidence that: (1) Wells Fargo made false representations, (2) Wells Fargo was aware that the speaker knew his statements were false or made recklessly and without knowledge of the truth; (3) the speaker intended Tatum to act upon his representation; (4) he suffered injury; or (5) Wells Fargo knew of or benefited from the falsity of a third-party's representation or promise.

In his brief, Tatum argues that the court should have submitted his fraud claims to a jury. In support of this argument, he quotes Section 27.01 of the Texas Business and Commerce Code, which defines a cause of action for statutory fraud, and he provides citations to several cases regarding evidentiary sufficiency after a jury trial, the need for an appellant to prove justifiable reliance on a misrepresentation, and whether a fraud claim for out-of-pocket damages is barred by the statute of frauds. But he does not respond to the no-evidence grounds for summary judgment raised by the motion. He provides neither argument nor citation to the record indicating that he came forward with legally sufficient evidence on the elements challenged by the no-evidence motion. Because summary judgment as to Tatum's fraud claims could have been rendered on the no-evidence

12

grounds raised in the motion, we must affirm the court's grant of summary judgment as to the fraud claims. *See Ellis*, 68 S.W.3d at 898.

### C. Breach of contract

In addition to Tatum's complaints about the foreclosure, he also contends that the loan agreements were orally modified and that Wells Fargo breached these agreements by accepting and keeping payments made after the foreclosure sale. Wells Fargo and Freddie Mac argued, among other things, that Tatum's contract claims were barred by the statute of frauds. On appeal, as in the trial court, Tatum argues that the statute of frauds does not apply because of the partial-performance exception and that the court should have considered parol evidence to determine the existence of an oral contract.

The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *E.g.*, *N. & W. Ins. Co. v. Sentinel Inv. Grp., LLC*, 419 S.W.3d 534, 539 (Tex. App.—Houston [1st Dist.] 2013, no pet.). The appellees challenge the first element by arguing that the statute of frauds defeats the allegation of an oral contract modification as a matter of law.

As relevant to the claims at issue in this case, the statute of frauds provides that a "loan agreement in which the amount involved in the loan agreement

exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or . . . [his] authorized representative." TEX. BUS. & COM. CODE § 26.02(b). The statute also provides that in such a loan agreement, the financial institution must give the debtor the following notice:

> This written loan agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties.
>
> There are no unwritten oral agreements between the parties.

*Id.* § 26.02(e). This notice "must be in type that is boldface, capitalized, underlined, or otherwise set out from surrounding written material so as to be conspicuous." *Id.* "Generally, if a contract falls within the statute of frauds, then a party cannot enforce any subsequent oral material modification to the contract." *SP Terrace, L.P. v. Meritage Homes of Tex., LLC*, 334 S.W.3d 275, 282 (Tex. App.— Houston [1st Dist.] 2010, no pet.) (citing *Dracopoulas v. Rachal*, 411 S.W.2d 719, 721 (Tex. 1967)).

In this case, both the deed of trust and the promissory note executed in 2001 are subject to the statute of frauds as contracts involving a loan agreement in excess of $50,000 in value. Tatum argues that the statute of frauds does not bar evidence of a subsequent oral modification because the deed of trust does not include the statutory language. However, the statute specifies that the language about the nullity of oral agreements may be contained in "a separate document

14

signed by the debtor . . . or incorporated into one or more of the documents constituting the loan agreement." TEX. BUS. & COM. CODE § 26.02(e). In this case, the statutory notice appears in boldface, capitalized type at the bottom of the promissory note that Tatum signed. Thus, the terms of the promissory note prohibit enforcement of a subsequent oral modification.

In *Ellen v. F.H. Partners, LLC*, No. 03-03-00310-CV, 2010 WL 4909973 (Tex. App.—Austin Dec. 1, 2010, no pet.) (mem. op.), the court of appeals held that a subsequent oral statement by a bank representative could not be enforced as a contract. After Sonny Ellen defaulted on a $500,000 mortgage for the purchase of real property, he approached the note holder's loan officer and asked for time to refinance or sell the property before the initiation of foreclosure proceedings. *Ellen*, 2010 WL 4909973, at *1. Ellen contended that the loan officer said such delay was "doable," which he interpreted as a promise to delay foreclosure. *Id.* But the property was sold at a foreclosure auction, and Ellen sued for promissory estoppel. *Id.* at *2. The court of appeals affirmed the trial court's take-nothing summary judgment. The appellate court held that because the loan agreement included a signed, written notice of invalidity of oral statements and because the loan agreement was subject to the statute of frauds, Ellen could not enforce an oral modification to the loan agreement. *Id.*

15

The same logic applies to this appeal: because the promissory note was subject to the statute of frauds and it included the statutory notice of invalidity of oral statements, any oral modification to Tatum's loan is unenforceable. *See id.*

Nevertheless, Tatum argues that his contract claims are not barred by the statute of frauds because the partial-performance exception applies. Partial performance of a contract is an equitable exception to the statute of frauds. *See Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied); *Resendez v. Maloney*, No. 01-08-00954-CV, 2010 WL 5395674, at *7 (Tex. App.—Houston [1st Dist.] Dec. 30, 2010, pet. denied) (mem. op.). "Under the partial performance exception to the statute of frauds, contracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud." *Exxon*, 82 S.W.3d at 439. Virtual fraud means that due to reliance on a contract, a party has suffered a substantial detriment for which he has no adequate remedy, and the other party would reap an unearned benefit if permitted to invoke the statute of frauds. *See id.* However, the acts constituting partial performance must be unequivocally referable to the agreement and corroborative of the fact that a contract actually was made, such that they serve no purpose other than to fulfill the particular agreement sought to be enforced. *Id.* Otherwise, they do not tend to

16

prove the existence of the otherwise unenforceable agreement relied upon by the plaintiff. *Id.* at 439–40.

Wells Fargo supported its motion for summary judgment with an affidavit from its corporate representative, who averred that the bank did not modify, agree to modify, or promise to modify Tatum's loan. Tatum's summary-judgment evidence does not indicate that Wells Fargo actually agreed to modify the loan. Instead his affidavit avers that he "endeavored to make acceptable arrangements" and that the parties "contemplated" a modification, but not that they actually reached an agreement or that Wells Fargo promised to modify the loan. When a nonmovant's summary-judgment evidence does no more than create a mere surmise or suspicion, it is not legally sufficient. *See Kroger Tex. L.P. v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006). Tatum's affidavit does not establish that Wells Fargo agreed to a loan modification: it provides no more than a hint or mere suspicion of an agreement. This is not legally sufficient. *See id.* Because there is no evidence of an agreement, there is also no evidence that Tatum's action in paying $10,900 to Wells Fargo was unequivocally referable to the agreement. *See Exxon*, 82 S.W.3d at 439. Moreover, apart from any allegation of an oral modification, the fact that the payments were made was consistent with Tatum's default and the acceleration of the loan. Accordingly, we conclude that the partial performance equitable exception to the statute of frauds does not apply in this case, and we hold

17

that the trial court did not err in granting summary judgment as to Tatum's breach of contract claim.

### D. Declaratory judgment

In his first amended petition, Tatum sought a declaratory judgment that (1) the parties modified the loan, (2) the foreclosure sale was void due to the loan modification and "lack of requisite notice of the alleged deficiency of the modified loan agreement," (3) Wells Fargo refunded the $10,900 that he paid in reliance on the loan modification, (4) Wells Fargo converted $10,900 that was deposited in his account, (5) $10,900 should be applied to the loan as modified, and (6) the appellees "should not be entitled to tack on late fees, attorney's fees or the costs of foreclosure on the loan balance." Tatum also sought attorney's fees in conjunction with his declaratory-judgment action.

Wells Fargo and Freddie Mac sought summary judgment as to the declaratory-judgment claim on the grounds that it is not the proper procedural device for resolving factual disputes and that the summary-judgment proof established as a matter of law that the foreclosure proceedings were proper. They argued that all of Tatum's claims failed "as a matter of fact and law." Summary judgment was granted, dismissing all of Tatum's declaratory-judgment claims.

On appeal, Tatum contends that a declaratory-judgment counterclaim is appropriate when it raises separate issues with "greater ramifications" or otherwise

not "fully covered" by the original suit. He also argues that he "provided sufficient evidence of an oral modification agreement" and that the trial court "erred by refusing to submit this evidence at final trial." He concludes his appellate argument by stating that "[t]his Court should reverse and require the trial court to enter a declaratory judgment spelling out the exact terms of the loan modification agreement including the interest rate, monthly note and schedule, and the term of the note if Derwin Tatum convinces the factfinder that the bank agreed to these terms."

It is axiomatic that to obtain reversal on appeal, an appellant must bring forward a "clear and concise argument for the contentions made." TEX. R. APP. P. 38.1(i). The only clear and concise argument offered for reversing the summary judgment dismissing the declaratory-judgment claims is predicated on the argument that the loan agreement was orally modified, and we have already explained that the trial court correctly rejected this claim. Accordingly, we overrule Tatum's appellate challenge to the dismissal of his declaratory-judgment claim. The appellees' brief addresses the substantive arguments they raised in the trial court to support their challenge to each particular aspect of Tatum's declaratory-judgment claim, but since Tatum's brief does not refute any of these arguments, we need not discuss them to affirm this aspect of the judgment. *See Ellis*, 68 S.W.3d at 898.

19

### E. Injunctive relief

Tatum makes no argument on appeal regarding the propriety of the summary judgment in respect to his claims for injunctive relief. Wells Fargo and Freddie Mac challenged his injunctive claims on the basis that his alleged injury was not irreparable and he was not likely to succeed at final trial on the merits. Because summary judgment as to Tatum's claims for injunctive relief could have been rendered on this unchallenged ground, we must affirm this part of the court's grant of summary judgment. *See id.*

We overrule Tatum's first issue.

## II. Contractual attorney's fees

In their motion for summary judgment, the appellees sought attorney's fees based on the contractual provision in the deed of trust. The trial court awarded attorney's fees to Wells Fargo and Freddie Mac, and Tatum challenges this award in his second issue. In particular, Tatum argues that (1) his counsel's affidavit controverted the reasonableness of the amount of fees incurred, (2) Wells Fargo "did not sue under the deed of trust" and the issue was not tried by consent, (3) the fees were not segregated between Wells Fargo and Freddie Mac, and (4) there was no presuit demand for attorney's fees.

**A. Contractual basis for fee recovery**

"As a general rule, litigants in Texas are responsible for their own attorney's fees and expenses in litigation." *Ashford Partners, Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 41 (Tex. 2012). "Under Texas law, a court may award attorney's fees only when authorized by statute or by the parties' contract." *Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 87 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009)).

Section 9 of the deed of trust authorizes the recovery of reasonable attorney's fees "if . . . there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument." Tatum filed suit against Wells Fargo and Freddie Mac arguing, among other things, that the foreclosure sale was wrongful and void for failure to strictly comply with the deed of trust. Considering that Tatum's petition sought to invalidate the foreclosure sale, this is a legal proceeding that might significantly affect the parties' interest in the property. *See, e.g.*, *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009) (courts are to construe contracts according to the plain, ordinary meaning of the language used).

Wells Fargo was the "Lender" under the deed of trust, and accordingly, unless the award is barred by some other rule of law, it was entitled to its

attorney's fees. Freddie Mac, however, was not a party to the deed of trust, nor was it a third-party beneficiary because the deed of trust did not clearly provide any benefit to one who subsequently purchased the property at a foreclosure sale. *See, e.g.*, *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002) (contract must contain clear and unequivocal language showing intent to benefit a third party for such party to be entitled to enforce the agreement as a third-party beneficiary). Thus, we conclude that Wells Fargo was entitled to recover attorney's fees, but Freddie Mac was not.

## B. Reasonableness of fees

Tatum also argues that the court erred in awarding attorney's fees because the amount of fees was unreasonable and was controverted by his attorney's affidavit. Tatum's attorney proffered two affidavits on the question of attorney's fees. The first affidavit stated:

> I am an attorney who is duly licensed by the State Bar of Texas and has been employed as a civil trial attorney for a period in excess of ten years. I am Board Certified in Personal Injury Trial Law. I am familiar with the usual, ordinary and customary charges for like or similar services that were rendered in connection with this cause. I have reviewed the request for attorneys' fees in the motion for summary judgment. In my opinion, the fees claimed are not a reasonable and necessary fee for the services rendered in preparation for this case.

Because this statement did not provide underlying facts to support the conclusion that the fees were unreasonable, it was conclusory, and therefore it did not raise a

22

fact issue on the question of the reasonableness of the requested attorney's fees. *See Ryland Grp.*, 924 S.W.2d at 122; *Pipkin*, 383 S.W.3d at 670.

In his second affidavit, Tatum's attorney averred that he had reviewed the affidavit from appellees' attorney, and in his opinion, the "fees claimed are not a reasonable and necessary fee for the services rendered in preparation for this case." He points out that Freddie Mac was previously represented by a different law firm. He mentions that billing entries as remote as February 2011 show charges for reviewing and responding to discovery requests, yet the appellees' counsel contended that they did not receive those requests and asked for duplicates as recently as July 2013. The affidavit also asserts that the fees are not segregated between Wells Fargo and Freddie Mac.

Like the earlier affidavit, this one is also conclusory because it does not provide a factual basis for the conclusion that the amount of fees requested by Wells Fargo was unreasonable. The affidavit does not provide any support to challenge the hourly rates charged as being unreasonably high, the time spent as excessive, the tasks performed as unnecessary, or that the work was not performed as detailed in the billing records. The lack of a factual basis for the conclusion offered makes this affidavit insufficient to raise a question of fact as to the reasonableness of attorney's fees. *See Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884, 895 (Tex. App.—Texarkana 2009, pet. denied) (holding that affidavit

23

did not controvert evidence of attorney's fees when it did not provide a factual basis for conclusion that fees were unreasonable).

**C. Trial by consent**

Tatum also argues that the judgment for attorney's fees was improper because the appellees did not include a request for attorney's fees in their pleadings, this defect was raised in the trial court, and the issue was not tried by consent. A judgment must be supported by the pleadings, and a party may not be granted relief in the absence of pleadings to support such relief. TEX. R. CIV. P. 301; *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983); *Salomon v. Lesay*, 369 S.W.3d 540, 553 (Tex. App.—Houston [1st Dist.] 2012, no pet.). However, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." TEX. R. CIV. P. 67; *see Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991); *Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 780 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Trial by consent may be applied in the context of summary judgments. *See Roark*, 813 S.W.2d at 495; *Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 273 n.6 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd). To determine whether an issue was tried by consent, we must review the record not for evidence of the issue, but rather for evidence of trial of the issue. *Hartford Fire Ins.*, 287 S.W.3d at 780.

24

"A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint." *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied). However, an issue is not tried by consent if the evidence relevant to that issue is also relevant to other issues raised by the pleadings. *See Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 446 (Tex. 1993).

Wells Fargo did plead for attorney's fees. In its original answer, Wells Fargo included a counterclaim for attorney's fees as a sanction for the filing of a frivolous claim. Tatum argued in the trial court that Wells Fargo had not filed a counterclaim upon which a recovery of attorney's fees could be predicated. However, the deed of trust does not require that Wells Fargo be a claimant in a legal proceeding affecting its interest in the property in order to be entitled to reasonable attorney's fees.

In any event, we conclude that in the unusual procedural circumstances presented in this case, the issue of attorney's fees was tried by consent. In opposing the appellees' request for attorney's fees in their motion for summary judgment, Tatum's counsel provided his own affidavit, in which he averred:

> As of the date of filing the motion for summary judgment, Defendant has not filed a counterclaim seeking attorney's fees. Notwithstanding the fact WELLS FARGO has not sued to recover attorneys' fees, the claimed amount for attorney's fees is excessive. The Court should

25

deny the motion for summary judgment and allow the factfinder to determine the amount of attorney's fees—in the event that it is needed. Attached hereto as Exhibit "B" please find an affidavit from that indicates that the $38,102.53 in attorneys' fees claimed are not a reasonable and necessary fee for the services rendered in preparation for this case.

In his affidavit, Tatum's counsel asserted that in his opinion the fees were not reasonable.

The parties entered into a Rule 11 agreement, providing for the late filing of a supplement to the motion for summary judgment and response thereto. The agreement took the form of a letter from Tatum's counsel to counsel for Wells Fargo and Freddie Mac, stating that no affidavit in support of attorney's fees had been received, and suggesting an extension of time for a response. The letter stated:

> To the extent you intend to seek a recovery for attorney's fees, kindly provide us a copy of these items by Thursday, July 18, at 10:00 a.m. In turn, afford us until Friday at 5:00 p.m. in which to convert [*sic*] this claim by supplementing our response to the motion for summary judgment. Should you not agree to our proposal, we will have no choice but to object to them on this basis.

> If this agreement meets with your approval, please indicate by signing below.

The agreement was signed by counsel for all parties.

Wells Fargo and Freddie Mac filed a supplement to their motion for summary judgment in regard to attorney's fees. In it, they argued that they were entitled to attorney's fees pursuant to the deed of trust and because Tatum's lawsuit

26

was frivolous. Attached to this supplement was an affidavit from their attorney, who averred that the fee was reasonable, was calculated based on the number of hours spent and the stated hourly rate, and that his hourly rate was reasonable. Billing records were attached which showed the hours worked and billed, the hourly rate, a narrative description of the tasks accomplished, and itemized costs. Tatum responded that the appellees had "not filed a counterclaim seeking attorneys' fees," and he opposed the fee request as unreasonable. In the attached affidavit, Tatum's attorney asserted his opinion that the fees were unreasonable.

At the summary-judgment hearing, Tatum's counsel specifically asked the court to approve the parties' agreement "with respect to the attorney's fees issue," i.e., for Tatum to waive 21-day notice required by rule, to allow the appellees to supplement their motion for summary judgment with an affidavit and records pertaining to attorney's fees, and for Tatum to file a response days before the summary-judgment hearing. The court granted a motion permitting Tatum's late filing.

Wells Fargo and Freddie Mac argued that the attorney's fees were authorized by both the deed of trust and the promissory note. Tatum disputed their entitlement to attorney's fees because they had not filed a counterclaim, and because the fees were not reasonable or segregated by defendant. He also argued

that some charges predated Wells Fargo's appearance in the case, and that Freddie Mac was not entitled to attorney's fees.

The record here shows that Tatum understood the issue of attorney's fees was part of the summary-judgment proceedings. His counsel brought to the appellees' attention the fact that he had not received an affidavit in support of their request for attorney's fees and agreed to allow them time to supplement their motion for summary judgment. He affirmatively sought court approval of their agreement regarding extending the time to supplement the motion for summary judgment and the time for Tatum's response to the attorney's fee request. Tatum raised his concerns regarding segregation and reasonableness. None of these arguments or the supporting evidence, i.e. competing affidavits, was relevant to any other issue in the case.

Because the issue of attorney's fees was developed under circumstances that indicated Tatum and the appellees understood the issue was in the case, we hold that the attorney's fees issue was tried by consent. *See Case*, 184 S.W.3d at 771.

**D. Segregation of fees**

Tatum further argues that the attorney's fee award was improper because the appellees' summary-judgment evidence did not segregate the fees by work done for each client. "When a lawsuit involves multiple claims or parties, the proponent of attorney's fees must segregate recoverable fees from those incurred by parties or

on claims for which fees are not recoverable." *Clearview Props., L.P. v. Prop. Tex. SC One Corp.*, 287 S.W.3d 132, 143 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006)). Attorney's fees that relate solely to a claim for which fees are unrecoverable must be segregated. *Chapa,* 212 S.W.3d at 313. The Supreme Court of Texas has held that attorney's fees are recoverable only as provided by contract or statute, and it "eliminated the exception for fees incurred solely on separate but arguably intertwined claims." *Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007) (citing *Chapa*, 212 S.W.3d at 313). But the Supreme Court did not require that all fees be segregated even when incurred by co-defendants jointly represented by the same counsel and when such fees are incurred as a result of the same discrete tasks and work. Such is the case here.

The billing records at issue show some charges for work incurred in regard to protecting Wells Fargo's interest and some incurred in protecting Wells Fargo and Freddie Mac's common interest. At the hearing, counsel for the appellees explained:

> Freddie Mac's only in the case because they purchased the property at the foreclosure sale. All of the claims are against Wells Fargo. So, in that sense, when we're filing pleadings on behalf of Wells Fargo, we're filing pleadings on behalf of Wells Fargo and Freddie Mac. Freddie Mac's only there by name, because there's no real claims against them. So, in that sense, we didn't have to segregate any time between Freddie Mac and Wells Fargo, because it's all the same work.

29

Wells Fargo was entitled to contractual attorney's fees by virtue of the deed of trust. Nothing in the record shows that any of the attorney's fees at issue were incurred for work solely on behalf of Freddie Mac. Accordingly, the appellees were not required to segregate attorney's fees. *See Chapa,* 212 S.W.3d at 313.

**E. Presuit demand**

Finally, Tatum argues that the attorney's fee award was improper because Wells Fargo failed to make a presuit demand in compliance with section 38.001 of the Civil Practice and Remedies Code. The appellees never sought statutory attorney's fees for breach of contract; rather, they sought attorney's fees as provided in the deed of trust. "When parties include an attorney's fee provision in a contract, the language of the contract controls rather than the language of the statute." *Peterson Grp.*, 417 S.W.3d at 88. Because Wells Fargo was not required to make a presuit demand, Tatum's argument to that effect lacks merit.

We sustain Tatum's second issue in part, and we will modify the trial court's judgment to award attorney's fees to Wells Fargo but not Freddie Mac. Tatum's second issue is otherwise overruled.

**III. Order for "adequate-protection" payments**

In his third issue, Tatum argues that the trial court erred by ordering him to make "adequate-protection" payments during the pendency of litigation. Among other things, he contends that this order was a mandatory injunction and that the

30

appellees did not establish their right to an injunction. Wells Fargo and Freddie Mac argue that the order was not an injunction and that the trial court had broad equitable powers to order these payments.

A temporary injunction is an extraordinary remedy, the purpose of which is "to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). An applicant seeking a temporary injunction must plead and prove: "(1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id.* The applicant is not required to establish that he will prevail at trial on the merits; rather, the only question before the trial court is whether the applicant is entitled to preservation of the status quo in the meantime. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Intercontinental Terminals Co. v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

In *Qwest Communications Corp. v. AT&T Corp.*, 24 S.W.3d 334 (Tex. 2000), the Supreme Court held that it is the character and function of an order, not whether it complies with formal and procedural requirements, that determines whether an order is an injunction. *Qwest*, 24 S.W.3d at 336–38. In that case, an order was an injunction when it restricted the defendant's conduct, mandated that it

take certain actions, was entered upon the plaintiff's request, was effective immediately, and operated during the pendency of the suit. *Id.* at 336–37.

Rules of Civil Procedure 683 and 684 set forth the formal requirements for an order granting a temporary injunction. Rule 683 provides:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

> Every order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought. The appeal of a temporary injunction shall constitute no cause for delay of the trial.

TEX. R. CIV. P. 683. Rule 684 requires that an order granting a temporary injunction "fix the amount of security to be given by the applicant." TEX. R. CIV. P. 684. "[T]hese procedural requirements are mandatory, and an order granting a temporary injunction that does not meet them is subject to being declared void and dissolved." *Qwest*, 24 S.W.3d at 337; *see InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986) (stating that requirements of Rule 683 are mandatory and must be strictly followed); *Conlin v. Haun*, 419 S.W.3d 682, 686 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (aggregating cases).

We conclude that the order for adequate protection functioned as a temporary injunction. It mandated that Tatum take certain actions, i.e., make periodic payments during the pendency of litigation, it was entered on the appellees' request, it was effective at the time it was entered, and it operated during the pendency of the suit. *See Qwest*, 24 S.W.3d at 336–37.

Tatum further argues that the order was improperly entered because the appellees did not prove their entitlement to an injunction in that they failed to plead and prove a cause of action against him, a probable right to the relief sought, and a probable, imminent, and irreparable injury in the interim. *See Butnaru*, 84 S.W.3d at 204. However, we need not reach this argument because our determination that this order is an injunction inescapably leads to the conclusion that it is void because it did not comply with the formal requirements in Rules 683 and 684. It did not set forth the reasons for its issuance, set the cause for trial, or fix any amount of security. *See* TEX. R. CIV. P. 683, 684. Accordingly, this order is void. *See Qwest*, 24 S.W.3d at 336–38. We do not reach Tatum's merits-based arguments pertaining to this order because "appellate courts do not have jurisdiction to address the merits of appeals from void orders." *Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012). We hold that the order granting adequate protection was void, we vacate that order, and we remand

to the trial court to determine what sum of money, if any, should be refunded to Tatum.

## Conclusion

We modify the trial court's judgment to award attorney's fees to Wells Fargo but not Freddie Mac, and we affirm the judgment as modified. We further vacate the order for adequate protection and remand to the trial court to determine what sum of money, if any, should be refunded to Tatum.


Michael Massengale
Justice

Panel consists of Justices Jennings, Sharp, and Massengale.